Nicole Buffalano (NB-7916)
Jamie Rucker (JR-6767)
National Labor Relations Board
Region 2
26 Federal Plaza, Room 3614
New York, New York 10278-0104
(212) 264-0493
(212) 264-0355


**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------X
**ELBERT F. TELLEM, Acting Regional Director,**
**Region 2, National Labor Relations Board,**
**for and on Behalf of the NATIONAL**
**LABOR RELATIONS BOARD,**

                              **Petitioner,**

       **-against-**                          11 Civ. _____ 1850 (___) TPG
                                              **ECF Case**

**PRESCHOOL OF AMERICA,**

                              **Respondent.**
------------------------------------------X


               **PETITION FOR TEMPORARY INJUNCTION UNDER**
      **SECTION 10(j) OF THE NATIONAL LABOR RELATIONS ACT (REVISED)**

       Comes now Elbert F. Tellem, Acting Regional Director for

Region 2 of the National Labor Relations Board, herein called the

Board, and petitions this Court for and on behalf of the Board,

pursuant to Section 10(j) of the National Labor Relations Act, as

amended, herein called the Act, (61 Stat. 149), 29 U.S.C. Sec.

160(j), for appropriate injunctive relief pending the final

disposition of the matters involved herein pending before the

Board on the Complaint and Notice of Hearing of the General

Counsel of the Board in Case Nos. 2-CA-39988, 2-CA-40056, and 2-

CA-40107, alleging that Preschool of America ("POA,"

"Respondent," or "the Employer") has engaged in and is engaging

in unfair labor practices in violation of Section 8(a)(1), (3),
(4), and (5) of the Act.   In support thereof, Petitioner
respectfully shows the following:

1.   Petitioner is the Acting Regional Director of Region 2
of the Board, an agency of the United States Government, and
files this petition for and on behalf of the Board.

2.   Jurisdiction of this Court is invoked pursuant to
Section 10(j) of the Act, 29 U.S.C. § 160(j).

3.   (a)   The charge in Case No. 2-CA-39988, filed by
District Council 1707, AFSCME ("the Union") on June 22, 2010[1] and
served three days later, alleges that soon after June 18 the
Employer interrogated employees about whether they supported the
Union and solicited employees to rescind their Union
authorization cards, in violation of Section 8(a)(1) of the
National Labor Relations Act, as amended ("the Act").   Copies of
the charge and affidavit of service are attached hereto as
Exhibit 1.

(b)   The original charge in Case No. 2-CA-40056 was
filed by the Union on August 6 and served five days later.
Amended versions of that charge were filed and served September
20 and 23, December 30 and January 3, 2011, and January 13 and
24, 2011.   As amended, the charge alleged that Respondent
violated Section 8(a)(1), (3), and (4) of the Act by:

(i)   On or about August 5, 2010, the above-named
Employer terminated employees Hope Dublin, Joan
Deleon, Anesia Lloyd, Tatiana Navia, Tamika Singleton,

---

[1] Unless otherwise noted, all dates hereinafter are in 2010.

and other similarly situated employees because of their support for and activities on behalf of District Council 1707, AFSCME, AFL-CIO (Union).

(ii) On or about August 16, 2010, the above-named Employer terminated employees Catherine Duran and Tatyana Gibbs and other similarly situated employees because of their support for and activities on behalf of the Union.

(iii) On or about August 24, 2010, the above-named Employer terminated employees Wendy Puello and Dianna DeLeon and other similarly situated employees because of their support for and activities on behalf of the Union.

(iv) On or about August 27, 2010, the above-named Employer terminated employees Evelyn Aguirre, Magaly Linares, and Reina Peralta and other similarly situated employees because of their support for and activities on behalf of the Union.

(v) On or about September 8, 2010, the above-named Employer terminated employee Amanda Nunes and other similarly situated employees because of their support for and activities on behalf of the Union.

(vi) On or around August 5, 2010, August 16, August 27 and again on September 8, the above-named Employer has failed and refused to bargain with the Union over a mandatory subject of bargaining, namely the termination of the aforementioned employees on the dates described herein.

(vii) On or around June 21, 2010, the above-named Employer, by Joanna Fan in its facility at 101 West End Avenue, interrogated its employees about their Union sympathies.

(viii) On or around June 21, 2010, the above-named Employer, by Joanna Fan in its facility at 101 West End Avenue, solicited the rescission of its employees' Union authorization cards.

(ix) On or around June 21, 2010, the above-named Employer, by Joanna Fan in its facility at 101 West End Avenue, created an impression among its employees that their Union activities were under surveillance by Employer.

(x) On or around June 23, 2010, the above-named Employer, by its agent Kathy Huang in its facility at 101 West End Avenue, interrogated its employees about their Union sympathies.

(xi) On or around June 23, 2010, the above-named Employer, by its agent Kathy Huang in its facility at 101 West End Avenue, solicited the rescission of its employees' Union authorization cards.

(xii) On or around June 24, the above-named Employer, by Robin Mauro in its facility at 101 West

End Avenue, threatened employees with termination if they supported the Union.

(xiii)    On or around June 24, the above-named Employer, by Robin Mauro in its facility at 101 West End Avenue, interrogated employees about their Union sympathies.

(xiv) On or around late June 2010, the above-named Employer, by Robin Mauro, in a letter, threatened its employees at 101 West End Avenue with unspecified reprisals if they supported the Union.

(xv) On or around July 9, the above-named Employer, by Robin Mauro in its facility at 101 West End Avenue, informed employees that support for the Union would be futile.

(xvi) On or around July 16, the above-named Employer, by Robin Mauro in its facility at 101 West End Avenue, threatened employees with discharge if they supported the Union.

(xvii)    On or around July 19, 2010, the above-named Employer, by Joanna Fan in its facility at West End Avenue, and on or around August 6, at its facility at 1501 Lexington Avenue, threatened employees that they would be replaced if they went on strike and threatened employees with decreased benefits and plant closure if the employees supported the Union.

(xviii)    On or around late July 2010, the above-named Employer, by Robin Mauro in its facility at 101 West End Avenue, interrogated employees about their Union activities and sympathies and the Union activities and sympathies of their co-workers.

(xix) On or around July 19, 2010, the above-named Employer, by Robin Mauro in its facility at 101 West End Avenue, threatened employees with discharge if they supported the Union.

(xx) On or around July 19, 2010, the above-named Employer, by Robin Mauro in its facility at 101 West End Avenue, informed its employees that it would be futile for them to select the Union as their bargaining representative.

(xxi) On or around July 21, 2010, the above-named Employer issued a written warning to Wendy Puello because she testified on behalf of the Union in Case No. 2-RC-23509.

(xxii)    On or around July 23, 2010, the above-named Employer, by Joanna Fan in its facility at 101 West End Avenue, interrogated employees about their Union sympathies, informed employees that support for the Union would be futile, gave employees the impression that their Union activities were under surveillance by the Employer, and solicited the grievances of employees with the implicit promise to remedy those grievances.

(xxiii)    On or around July 26, 2010, the above-named Employer, by Joanna Fan in its facility at 101 West End Avenue, informed employees it would be futile for them to select the Union as their bargaining representative.

(xxiv)    On or around July 26, 2010, the above-named Employer by Joanna Fan in its facility at 101 West End Avenue, threatened employees with discharge if they supported the Union.

(xxv) On or around July 27, 2010, the above-named Employer, by Mego Gojka in its facility at 101 West End Avenue, informed employees it would be futile for them to select the Union as their bargaining representative.

(xxvi)    On or around July 27, 2010, the above named Employer, by Mego Gojka in its facility at 101 West End Avenue, threatened employees with discharge if they engaged in a strike.

(xxvii)    On or around July 27, 2010, the above-named Employer, by Robin Mauro in its facility at 101 West End Avenue, threatened employees with discharge if they went on strike.

(xxviii)    On or around July 27, 2010, the above-named Employer, by Robin Mauro or Mego Gojka in its facility at 101 West End Avenue, threatened employees with termination if they supported the Union.

(xxix)    On or around July 27, 2010, the above-named Employer, by Robin Mauro, Mego Gojka, and/or Jill Howard in its facility at 101 West End Avenue, promised employees that the Employer would discuss improving the sick leave policy if employees abandoned support for the Union.

(xxx) On or around July 28, 2010, the above-named Employer, by Joanna Fan in its facility at 101 West End Avenue, promised employees increased benefits if they refrained from supporting the Union and informed employees that support for the Union was futile.

(xxxi)    On or around July 30, 2010, the above-named Employer, by Joanna Fan in its facility at 101 West End Avenue, threatened employees with termination if they engaged in a strike.

(xxxii)    On or around July 30, 2010, the above-named Employer, by Joanna Fan in its facility at 101 West End Avenue, threatened employees with a five-year wage freeze if they supported the Union and solicited employee grievances and implicitly promised to remedy those grievances.

(xxxiii)    On or around July 30, 2010, the above-named Employer, by Joanna Fan in its facility at 101 West End Avenue, informed employees that it would be futile for them to select the Union as their bargaining representative.

(xxxiv)   On or around July 30, 2010, the above-named Employer, by Joanna Fan in its facility at 101 West End Avenue, threatened employees with a change in working conditions.

(xxxv)   On or around July 30, 2010, the above-named Employer, by Joanna Fan in its facility at 101 West End Avenue, threatened employees with unspecified reprisals if they supported the Union.

(xxxvi)   On or around August 2, 2010, the above-named Employer, by Joanna Fan in its facility at 101 West End Avenue, interrogated employees about their Union sympathies.

(xxxvii)   On or around August 5, 2010, the above-named Employer, by Joanna Fan in its facility at 1501 Lexington Avenue, informed employees that support for the Union would be futile, created the impression that employees' Union activities were under surveillance, promised employees increased wages if they did not select the Union as their representative, and threatened employees with changed terms and conditions of employment, unspecified reprisals, and facility closure if they supported the Union.

(xxxviii) On or around August 10, 2010, the above-named Employer, by Gina Cavitolo in its facility at 1501 Lexington Avenue, gave employees the impression their Union activities were under surveillance by the Employer.

(xxxix)   On or around August 10, 2010, the above-named Employer, by Gina Cavitolo in its facility at l501 Lexington Avenue, told employees that employees at the West End facility had been terminated for their Union activities.

(xl) On or around August 10, 2010, the above-named Employer, by Gina Cavitolo in its facility at 1501 Lexington Avenue, threatened employees with termination if they supported the Union.

(xli) On or around August 16, 2010, the above-named Employer, by Gina Cavitolo in its facility at 1501 Lexington Avenue, informed employees that it would be futile for them to select the Union as their bargaining representative.

(xlii)   On or around August 16, 2010, the above-named Employer, by Gina Cavitolo in its facility at 1501 Lexington Avenue, threatened employees with termination if they supported the Union.

(xliii)   On or around August 16, 2010, the above-named Employer, by Gina Cavitolo in its facility at 1501 Lexington Avenue, told employees that employees at the West End facility had been terminated for their Union activities.

(xliv)   On or around August 19, 2010, the above-named Employer, by Mego Gojka near its facility

at 101 West End Avenue, informed employees that they were terminated for supporting the Union.

(xlv) On or around August 24, 2010, the above-named Employer, by Gina Cavitolo in its facility at 1501 Lexington Avenue, informed employees that it would be futile for them to select the Union as their bargaining representative.

(xlvi)    On or around August 24, 2010, the above-named Employer, by Cavitolo in its facility at 1501 Lexington Avenue, told employees that employees at the West End facility had been terminated for Union activities and threatened employees with discharge if they supported the Union.

(xlvii)    On or around the last week of August, the above-named Employer, by its agent Kelly Li at its facility located at 1501 Lexington Avenue, threatened employees with termination if they selected the Union and promised employees benefits, i.e. a 3% wage increase, if they rejected the Union.

Copies of the charge, amended charge, second amended charge, and third amended charge, paired with their respective affidavits of service, are attached hereto as Exhibit 2.

(c)    The charge in Case No. 2-CA-40107, filed by the Union on September 8 and served the same day, alleges that the Employer failed to meet and bargain with the Union as the exclusive collective bargaining representative of certain of the Employer's employees working at 101 West End Avenue, New York, New York and failed and refused to provide to the Union relevant, requested information necessary for the Union to fulfill its duties as the collective-bargaining representative of those employees, in violation of Section 8(a)(5) and (1) and Section 8(d) of the Act.    Copies of the charge and corresponding affidavit of service are attached hereto as Exhibit 3.

4.    (a)    The aforesaid charges were referred to the Acting Regional Director of Region 2 of the Board.    Following an

investigation of the allegations, the Acting General Counsel of the Board, by the Acting Regional Director, issued an Order Consolidating Cases, Consolidated Complaint, and Notice of Hearing, herein called the Complaint, on or about January 25, 2011. An Amendment to Consolidated Complaint was issued March 2, 2011. The Complaint, the Amendment, and their corresponding affidavits of service are attached hereto as Exhibit 4(a)-(d).

 (b) Respondent, by its Counsel, filed an Answer to the Complaint on or about February 9, 2011. A copy of that Answer is attached hereto as Exhibit 5.

 5. Based upon the evidence adduced during the investigation of the unfair labor practice charges described above in paragraph 3, Petitioner has reasonable cause to believe that the pertinent allegations contained in the Complaint are true, and that Respondent has committed serious violations of Section 8(a)(1), (3), (4), and (5) of the Act which require the remedy sought herein. More particularly, Petitioner alleges:

 (a) At all material times, Respondent, a New York corporation with facilities, among others, located at 101 West End Avenue, New York, New York 10454 ("West End" or "WE") and 1501 Lexington Avenue, New York, New York ("Lexington" or "LEX"), is engaged in the business of operating preschools in the New York City metropolitan area. (*Compare* Exh. 4(a), ¶ 4(a) *with* Exh. 5, ¶ 4; Joanna Fan affidavit, attached hereto as Exhibit 6, at ¶¶ 2-3.)

(b)   Annually, in the course and conduct of its business operations described above in subparagraph (a), the Employer derives gross revenues in excess of $1,000,000. (*Compare* Exh. 4(a), ¶ 4(b) *with* Exh 5, ¶ 4.)

(c)   Annually, in the course and conduct of its business operations described above in subparagraph (a), the Employer purchases and receives at the aforementioned facilities, goods and material valued in excess of $5,000 directly from suppliers located outside the State of New York. (*Id.*)

(d)   At all material times Respondent has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act. (*Compare* Exh. 4(a), ¶ 4(c) *with* Exh. 5, ¶ 4.)

(e)   The Union is now, and has been at all material times, a labor organization within the meaning of Section 2(5) of the Act. (*See* stipulated election agreement between Respondent and Union in Case No. 2-RC-23506, attached hereto as Exhibit 7; *Spruce Co.*, 321 NLRB 919, n.2 (1996) (where employer has entered into stipulated election agreement, it has thereby admitted labor organization status of union participating in election); *Innovative Facility Services, LLC*, 349 NLRB No. 9, n.1 (2007) (same).)

(f)   At all material times, the following individuals held the positions set forth opposite their names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent acting on its behalf:

```
Joanna Fan      Owner and Chief Executive Officer
Jill Howard     Managing Director
Mego Gojka      Managing Director
Robin Mauro     West End Site Director
Gina Cavitolo   Lexington Site Director
```

(*Compare* Exh. 4(a), ¶ 5(a) *with* Exh. 5, ¶ 5; *see also* Exhibit 6, ¶¶ 1-2 and affidavits of Jill Howard, Mego Gojka, Robin Mauro, and Gina Cavitolo, attached hereto as Exhibits 8-11.)

(g)   Based on the allegations as set forth below in paragraphs (5)(n)(i) and (ii) and (5)(t)(i) and (ii), the individuals named therein have been acting as agents of Respondent within the meaning of Section 2(13) of the Act. (*Compare* Exh. 4(a), ¶ 5(b) *with* Exh. 5, ¶ 5; *see also* Exh. 6, ¶¶ 13-14; affidavit of Kathy Huang, attached hereto as Exhibit 12, at ¶ 14; affidavit of Catherine Duran, attached hereto as Exhibit 13, at ¶ 10; affidavit of Gail Wells, attached hereto as Exh. 14, ¶ 16.)

(h)   (i)   The following employees of Respondent, herein called the West End Assistant Teacher Unit, constitute a unit appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act:

Included: All full-time and regular part-time teaching assistants, teaching assistants who serve as floaters, and kitchen/maintenance employees, employed by the [Respondent] at its facility located at 101 West End Avenue, New York, New York.

Excluded: All other employees, and guards, professional employees, and supervisors as defined in the Act.

(*Compare* Exh. 4, ¶ 6(a) *with* Exh. 5, ¶ 6; *see also* Certification in Case No. 2-RC-23506, attached hereto as Exhibit 15.)

(ii) On August 2, a representation election was conducted among the employees in the West End Assistant Teacher Unit and on August 10, the Union was certified as the exclusive collective-bargaining representative of the West End Assistant Teacher Unit. (*Compare* Exh. 4(a), ¶ 6(b) *with* Exh. 5, ¶ 6; *see also* Exhibit 15; Tally of Ballots in Case No. 2-RC-23506, attached hereto as Exhibit 16.)

(iii) At all times since August 2, based on Section 9(a) of the Act, the Union has been the exclusive bargaining-representative of the Unit. (*Compare* Exh. 4(a), ¶ 6(c) *with* Exh. 5, ¶ 6.)

(i)   (i)   The following employees of Respondent, herein called the West End Head Teacher Unit, constitute a unit appropriate for the purposes of collective bargaining within the meaning of Section 9(b) of the Act:

All full-time and regular part-time head teachers employed by Respondent at its facility located at 101 West End Avenue, New York, New York.

(Petition in Case No. 2-RC-23506 with its corresponding affidavit of service, attached hereto as Exhibit 17 (a) and (b); petition in Case No. 2-RC-23509 with its corresponding affidavit of service, attached hereto as Exhibit 18 (a) and (b); Notice of Hearing and Notice Rescheduling Hearing in Case No. 2-RC-23509 and affidavit of service of Notice Rescheduling Hearing, attached hereto as Exhibit 19; Decision and Direction of Election in Case No. 2-RC-23509, attached hereto as Exhibit 20; September 7, e-mail from Union counsel Harvey Mars to Regional Director Celeste Mattina, attached hereto as Exhibit 21; September 9, Regional Director Celeste Mattina letter blocking election in Case No. 2-RC-23509, attached hereto as Exhibit 22; September 22, Board Order denying Respondent's request for review

of the Decision and Direction of Election, attached hereto as Exhibit 23.)

(ii) From about May 5 to about May 10, a majority of the West End Head Teacher Unit employed by the Respondent designated and selected the Union as their representative for the purposes of collective-bargaining. (Respondent supplied payroll records, attached hereto as Exhibit 24, at pp. 3-4; Exh. 10, at ¶ 14 and Exh. A; affidavit of Julian DeJesus, attached hereto as Exhibit 25, at ¶ 4; affidavit of Anesia Lloyd, attached hereto as Exhibit 26, at ¶ 10; affidavit of Wendy Puello, attached hereto as Exhibit 27 at ¶ 10; affidavit of Kallyope Reyes, attached hereto as Exhibit 28, at ¶ 2 and Exh A; affidavit of Sara May, attached hereto as Exhibit 29, at ¶ 2 and Exh. A; affidavit of Jennie Vasquez, attached hereto as Exhibit 30, at ¶ 1 and Exh. A; employee authorization cards, attached hereto as Exhibit 81.)

(iii) At all times since around June 21, the Union has been the exclusive collective-bargaining representative of the West End Head Teacher Unit.

(j) (i) The following employees of Respondent, herein called the Lexington Assistant Teacher Unit, constitute a unit appropriate for the purposes of collective-bargaining within the meaning of Section 9(b) of the Act:

All full-time and regular part-time teaching assistants, teaching assistants who serve as floaters, and kitchen/maintenance employees, employed by the Respondent at its facility located at 1501 Lexington Avenue, New York, New York.

(Compare Exh. 4(a), ¶ 9(a) with Exh. 5, ¶ 9; Petition and corresponding affidavit of service in Case No. 2-RC-23518,

12

attached hereto as Exhibit 31; stipulated election agreement in Case No. 2-RC-23518, attached hereto as Exhibit 32; September 2 e-mail from Union counsel Harvey Mars to Celeste Mattina, attached hereto as Exhibit 33; see challenged ballot envelope and blank tally sheet from Case No. 2-RC-23518, attached hereto as Exhibit 34, indicating election was run but no count was performed.)

(ii) From about May 24 to about July 12, a majority of the Lexington Assistant Teacher Unit employed by the Respondent designated and selected the Union as their representative for the purposes of collective-bargaining. (Exh. 24 at p. 6; e-mail from Marc Bresky to Nicole Buffalano dated January 13, 2011, attached hereto as Exhibit 35; e-mail from Marc Bresky to Nicole Buffalano dated February 7, 2011, attached hereto as Exhibit 36; affidavit of Kelly Li, attached hereto as Exhibit 37, at ¶ 7; affidavit of Dianna DeLeon, attached hereto as Exhibit 38, at ¶ 14; Exhibit 25, ¶ 10; compare Exh. 4(a), ¶ 9 with Exh. 5, ¶ 9; employee authorization cards, attached hereto as Exhibit 82.)

(iii) At all times since around August 5, the Union has been the exclusive collective-bargaining representative of the Lexington Assistant Teacher Unit.

(k) (i) The following employees of Respondent, herein called the Lexington Head Teacher Unit, constitute a unit appropriate for the purposes of collective-bargaining within the meaning of Section 9(b) of the Act:

All full-time and regular part-time head teachers employed by the Respondent at its facility located at 1501 Lexington Avenue, New York, New York.

(Exh. 21; Exh. 32; Exh. 33.)

(ii) About May 24, a majority of the Lexington Head Teacher Unit employed by the Respondent designated and selected the Union as their representative for the purposes of collective-bargaining. (Exh. 24, p. 6; Exhs. 35-37; Exhibit 38, ¶ 14; Exhibit 25, ¶ 10; employee authorization cards, attached hereto as Exhibit 83.)

(iii) At all times since around August 5, the Union has been the exclusive collective-bargaining representative of the Lexington Head Teacher Unit.

(l) Beginning on or around May 5, and May 24, the Union commenced organizing drives at the Employer's facilities located at 101 West End Avenue, New York, New York and 1501 Lexington Avenue, New York, New York, respectively. (Exh. 25, ¶¶ 2-3; *see also* affidavit of Zullay Pichardo, attached hereto as Exhibit 39, at ¶¶ 5-8.)

(m) Respondent, by Joanna Fan:

(i) On about June 21, in its facility at 101 West End Avenue, interrogated employees about their Union sympathies (Exh. 6, ¶¶ 12-13; Exh. 26, ¶ 11; Exh. 27, ¶ 11; *see also* affidavit of Hope Dublin, attached hereto as Exhibit 40, at ¶ 12; affidavit of Tamika Singleton, attached hereto as Exhibit 41, at ¶ 9; affidavit of Joan DeLeon, attached hereto as Exhibit 42 at ¶ 10);

(ii) On about June 21, in its facility located at 101 West End Avenue, solicited the rescission of its employees' Union authorization cards (Exh. 6, ¶¶ 12-13; *see also*

14

prepared forms executed by various employees and supervisors, attached hereto as Exhibits 43-61);

        (iii) On about June 21, in its facility at 101 West End Avenue, created an impression among employees that their Union activities were under surveillance by Respondent (Exh. 41, ¶ 9);

        (iv) On about July 19, in its facility at 101 West End Avenue, threatened employees with discharge if they went on strike (Exh. 6, ¶ 16 and Exhs. D-F);

        (v)  On about July 19, in its facility at 101 West End Avenue, threatened employees with a four-year wage freeze if they supported the Union (Exh. 6, ¶ 16 and Exh. D);

        (vi) On about July 19, in its facility at 101 West End Avenue, threatened employees with plant closure if they supported the Union (*Id.*);

        (vii) On about July 23, in its facility at 101 West End Avenue, interrogated employees about their Union sympathies (Exh. 13, ¶ 13);

        (viii)   On about July 23, in its facility at 101 West End Avenue, informed employees it would be futile for them to select the Union as their bargaining representative (*Id.*);

        (ix) On about July 23, in its facility at 101 West End Avenue, created an impression among employees that their Union activities were under surveillance by Respondent (*Id.*);

(x)   On about July 23, in its facility at 101 West End Avenue, by soliciting employee complaints and grievances, promised employees increased benefits and improved terms and conditions of employment if they did not select the Union as their bargaining representative (*Id.*);

(xi) On about July 26, in its facility at 101 West End Avenue, informed employees it would be futile for them to select the Union as their bargaining representative (Exh. 40, ¶ 17);

(xii) On about July 26, in its facility at 101 West End Avenue, threatened employees with discharge if they supported the Union (*Id.*);

(xiii)   On about July 28, in its facility at 101 West End Avenue, promised employees a preferable position if they voted against the Union (Exh. 41, ¶ 13);

(xiv) On about July 28, in its facility at 101 West End Avenue, informed employees it would be futile for them to select the Union as their bargaining representative (*Id.*);

(xv) On about July 30, in its facility at 101 West End Avenue, threatened employees with termination if they engaged in a strike (Exh. 13, ¶ 16; Exh. 26, ¶ 16; Exh. 41, ¶ 12; Exh. 42, ¶ 20);

(xvi) On about July 30, in its facility at 101 West End Avenue, either threatened employees with a five-year wage freeze if they supported the Union or promised employees a two percent wage increase if they did not support the Union (Exh.

6, ¶¶ 20-21 and Exh. H; Exh. 42, ¶ 21; supplemental affidavit of Hope Dublin, attached hereto as Exhibit 62, at ¶ 3);

        (xvii)    On about July 30, in its facility at 101 West End Avenue, by soliciting employee complaints and grievances, promised employees increased benefits and improved terms and conditions of employment if they did not select the Union as their bargaining representative (Exh. 26, ¶¶ 16-17; Exh. 40, ¶ 21; supplemental affidavit of Joan DeLeon, attached hereto as Exhibit 63, at ¶ 16; supplemental affidavit of Tamika Singleton, attached hereto as Exhibit 64, at ¶ 10);

        (xviii)    On about July 30, in its facility at 101 West End Avenue, informed employees it would be futile for them to select the Union as their bargaining representative (Exh. 42, ¶ 21; Exh. 62, ¶ 3);

        (xix) On about July 30, in its facility at 101 West End Avenue, threatened employees with more onerous working conditions if they selected the Union as their bargaining representative (Exh. 42, ¶ 19; Exh. 62, ¶ 3; Exh. 63, ¶¶ 14 and 17);

        (xx) On about July 30, in its facility at 101 West End Avenue, threatened employees with unspecified reprisals if they selected the Union as their bargaining representative (Exh. 42, ¶ 19);

        (xxi) On about August 2, in its facility at 101 West End Avenue, interrogated employees about their Union sympathies (Exh. 41, ¶ 14);

(xxii)    On about August 5, in its facility at 1501 Lexington Avenue, threatened employees with plant closure if they supported the Union (Affidavit of Reina Peralta, attached hereto as Exhibit 65, at ¶ 16; affidavit of Evelyn Aguirre, attached hereto as Exhibit 66, at ¶ 10);

(xxiii)    On about August 5, in its facility at 1501 Lexington Avenue, informed employees it would be futile for them to select the Union as their bargaining representative (Exh. 14, at ¶ 10; Exh. 38, ¶ 20; Exh. 65, ¶ 16; Exh. 66, ¶ 10);

(xxiv)    On about August 5, in its facility at 1501 Lexington Avenue, created the impression among employees their Union activities were under surveillance by Respondent (Exh. 14, ¶ 10; Exh. 38, ¶ 20);

(xxv) On about August 5, in its facility at 1501 Lexington Avenue, threatened employees with unspecified reprisals if they selected the Union as their bargaining representative (Id.);

(xxvi)    On about August 5, in its facility at 1501 Lexington Avenue, promised employees increased wages if they rejected the Union as their bargaining representative (Exh. 6, ¶ 20 and Exh. H.; Exh. 14, ¶ 10; Exh. 65, ¶ 16; Exh. 66, at ¶ 10); and

(xxvii)    On about August 5, in its facility at 1501 Lexington Avenue, threatened employees with more onerous terms and conditions of employment if they selected the Union as their bargaining representative (Exh. 14, ¶ 10; Exh. 38, ¶ 20).

(n)   Respondent, by Kathy Huang,

(i)   On about June 23, in its facility at 101 West End Avenue, interrogated employees about their Union sympathies (Exh. 6, ¶¶ 13-14; Exh. 12, ¶ 14; Exh. 13, ¶ 10); and

(ii)   On about June 23, in its facility at 101 West End Avenue, solicited the rescission of employees' Union authorization cards (*Id.*; *see also* Exhs. 43-61).

(o)   Respondent, by Robin Mauro,

(i)   On about June 24, in its facility at 101 West End Avenue, threatened employees with termination if they supported the Union (Exh. 42, ¶ 11; affidavit of Samantha Gordian-Gerena, attached hereto as Exhibit 67, at ¶ 13);

(ii)   On about June 24, in its facility at 101 West End Avenue, interrogated employees about their Union sympathies (*Id.*);

(iii) In about late June, in its facility at 101 West End Avenue, threatened employees with unspecified reprisals if they supported the Union (Exh. 10, ¶ 39 and Exh. AA; Exh. 42, ¶ 12 and Exh. C);

(iv)   On about July 9, in its facility at 101 West End Avenue, informed employees it would be futile for them to select the Union as their bargaining representative (Exh. 42, ¶ 14);

(v)   On about July 16, in its facility at 101 West End Avenue, threatened employees with discharge if they supported the Union (Exh. 13, ¶ 12);

19

(vi) On about July 19, in its facility at 101 West End Avenue, threatened employees with discharge if they supported the Union (Exh. 40, ¶ 16);

(vii) On about July 19, in its facility at 101 West End Avenue, informed employees it would be futile for them to select the Union as their bargaining representative (*Id.*);

(viii)   In about late July, in its facility at 101 West End Avenue, interrogated employees about their Union activities and sympathies and the Union activities and sympathies of their co-workers (*Id.*); and

(ix) On about July 27, in its facility at 101 West End Avenue, threatened employees with discharge if they went on strike (Exh. 42, ¶ 17).

(p)   Respondent, by Mego Gojka,

(i)  On about July 27, in its facility at 101 West End Avenue, informed employees it would be futile for them to select the Union as their bargaining representative (Exh. 13, ¶ 15; Exh. 26, ¶ 14; Exh. 40; ¶ 19; Exh. 41, ¶ 15; Exh. 62, ¶ 2; Exh. 63, ¶ 4; Exh. 64, ¶ 4);

(ii) On about July 27, in its facility at 101 West End Avenue, threatened employees with discharge if they engaged in a strike (Exh. 10, ¶ 47; Exh. 13, ¶ 15); and

(iii) On about   August   19,   at   Respondent's facility at 101 West End Avenue, informed employees they had been discharged because they supported the Union (Exh. 25, ¶ 26; Exh. 62, ¶ 5).

(q) On about July 27, Respondent, by Robin Mauro and/or Mego Gojka, in its facility at 101 West End Avenue, threatened employees with discharge if they supported the Union (Exh. 40, ¶ 20).

(r) On about July 27, Respondent, by Robin Mauro, Mego Gojka, and/or Jill Howard, in its facility at 101 West End Avenue,

(i) Promised employees the Respondent would consider improving its leave policy if employees abandoned their support for the Union (Exh. 26, ¶ 14; Exh. 40, ¶ 20; Exh. 62, ¶ 2; Exh. 63, ¶ 6; Exh. 64, ¶ 5); and

(ii) Threatened employees with discharge if they supported the Union (Exh. 40, ¶ 20).

(s) Respondent, by Gina Cavitolo,

(i) On about August 10, in its facility at 1501 Lexington Avenue, created the impression that employees' activities were under surveillance by Respondent (affidavit of Magaly Linares, attached hereto as Exhibit 68, at ¶ 14);

(ii) On about August 10, in its facility at 1501 Lexington Avenue, informed employees that employees at Respondent's 101 West End facility had been terminated for their Union activities (*Id.*);

(iii) On about August 10, in its facility at 1501 Lexington Avenue, threatened employees with discharge if they supported the Union (*Id.*);

(iv) On about August 16, in its facility at 1501 Lexington Avenue, informed employees it would be futile for them to select the Union as their bargaining representative (Exh. 65, ¶ 19);

(v)  On about August 16, in its facility at 1501 Lexington Avenue, threatened employees with discharge if they supported the Union (*Id.*);

(vi) On about August 16, in its facility at 1501 Lexington Avenue, informed employees that employees at Respondent's 101 West End facility had been discharged for their Union activities (*Id.*);

(vii) On about August 24, in its facility at 1501 Lexington Avenue, informed employees it would be futile for them to select the Union as their bargaining representative (*Id.* at ¶ 24); and

(viii)  On about August 24, in its facility at 1501 Lexington Avenue, threatened employees with discharge if they supported the Union (*Id.*; Exh. 68, ¶ 16).

(t)  About the last week of August, Respondent, by Kelly Li, in its facility at 1501 Lexington Avenue,

(i)  Threatened employees with discharge if they selected the Union (Exh. 66, ¶ 13); and

(ii) Promised employees increased wages if they rejected the Union (*Id.*).

(u)   (i)   About July 21, Respondent issued a written warning to its employee Wendy Puello (Exh. 10, ¶ 26; Exh. 27, ¶ 20 and Exh. B).

(ii) Respondent engaged in the conduct described above in subparagraph (i) because Wendy Puello testified at a representation hearing before the Board in Case No. 2-RC-23509.

(v)   (i)   About the dates set forth opposite their names, Respondent discharged the employees named below:

| | | |
|---|---|---|
| 1. | Hope Dublin | August 5 |
| 2. | Anesia Lloyd | August 5 |
| 3. | Tamika Singleton | August 5 |
| 4. | Joan DeLeon | August 5 |
| 5. | Tatiana Navia | August 5 |
| 6. | Cindy Fandino | August 8 |
| 7. | Catherine Duran | August 16 |
| 8. | Tatyana Gibbs | August 16 |
| 9. | Wendy Puello | August 24 |
| 10. | Dianna DeLeon | August 24 |
| 11. | Evelyn Aguirre | August 27 |
| 12. | Magaly Linares | August 27 |
| 13. | Reina Peralta | August 27 |
| 14. | Amanda Nunes | September 1 |

(Exh. 10, ¶¶ 17, 19-26, 28, 30; Exh. 11, ¶¶ 10, 15-16; Cindy Fandino termination letter dated August 8, attached hereto as Exhibit 69; *see* Respondent created time and attendance chart, attached hereto as Exhibit 70; *see* termination letters of Anesia Lloyd, Tamika Singleton, Hope Dublin, Joan DeLeon, Amanda Nunes,

Tatiana Navia, Tatyana Gibbs, and Catherine Duran, attached hereto as Exhibits 71-78.)

(ii) Since on or about the dates set forth opposite their names, Respondent has failed and refused to reinstate, or offer to reinstate, the employees named above in sub-subparagraph (i) to their former positions of employment. (*Compare* Exh. 4(a), ¶ 20(b) *with* Exh. 5, ¶ 21.)

(iii) Respondent engaged in the conduct described above in sub-subparagraphs (i) and (ii) because the named employees of Respondent supported and/or assisted the Union and engaged in concerted, protected activities, and to discourage employees from engaging in these activities.

(w) (i) The subjects set forth above in sub-subparagraphs (v)(i) and (ii) relate to wages, hours, and other terms and conditions of employment of the West End Assistant Teacher Unit, West End Head Teacher Unit, Lexington Assistant Teacher Unit, and Lexington Teacher Unit and are mandatory subjects for the purposes of collective-bargaining.

(ii) Respondent engaged in the conduct described above in subparagraphs (v)(i) and (ii) without prior notice to the Union and without affording the Union an opportunity to bargain with Respondent with respect to this conduct.

(x) (i) About August 11 and September 2, the Union, by its attorney, Harvey Mars, requested that Respondent recognize it as the exclusive collective-bargaining representative of the West End Assistant Teacher Unit and bargain collectively with the

Union as the exclusive collective-bargaining representative of the West End Assistant Teacher Unit. (Affidavit of Harvey Mars, attached hereto as Exhibit 79, at ¶¶ 3, 7, and 13, and Exhs. C, G and J; *see also* supplemental affidavit of Harvey Mars, attached hereto as Exhibit 80.)

(ii) Since about August 11, Respondent has failed and refused to bargain with the Union as the exclusive collective-bargaining representative of the West End Assistant Teacher Unit. (Exh. 79, at ¶¶ 8-9; *generally* Exh. 80.)

(y) (i) Since about August 6, the Union, by letter, has requested that Respondent furnish the Union with the names, dates of hire, and salaries for all teaching assistants who were hired to replace West End Assistant Teacher Unit employees Hope Dublin, Joan DeLeon, Anesia Lloyd, Tatiana Navia, and Tamika Singleton. (Exh. 79, ¶ 1 and Exh. A.)

(ii) The information requested by the Union, as described above in sub-subparagraph (y)(i), is necessary for and relevant to the Union's performance of its duties as the exclusive collective-bargaining representative of the West End Assistant Teacher Unit.

(iii) Since about August 6, Respondent has failed and refused to furnish the Union with the information requested by it, as described above in sub-subparagraph (y)(i). (*Id.* at ¶¶ 7-8 and Exhs. A and H.)

(z) (i) Since about August 9, the Union, by letter, has requested that Respondent furnish the Union with all

documentation, including time and attendance reports, supporting Respondent's decision to terminate Hope Dublin, Joan DeLeon, Anesia Lloyd, Tatiana Navia, and Tamika Singleton. (*Id.* at ¶ 2 and Exh. B.)

(ii) The information requested by the Union, as described above in sub-subparagraph (z)(i), is necessary for and relevant to the Union's performance of its duties as the exclusive collective-bargaining representative of the West End Assistant Teacher Unit.

(iii) Since about August 9, Respondent has failed and refused to furnish the Union with the information requested by it, as described above in sub-subparagraph (z)(i).

(aa) (i) Since about August 16, the Union, by letter, has requested that Respondent furnish the Union with all documentation, including time and attendance reports, supporting Respondent's decision to terminate Catherine Duran and Tatyana Gibbs. (*Id.* at ¶ 4 and Exh. D.)

(ii) The information requested by the Union, as described above in sub-subparagraph (aa)(i), is necessary for and relevant to the Union's performance of its duties as the exclusive collective-bargaining representative of the West End Assistant Teacher Unit.

(iii) Since about August 16, Respondent has failed and refused to furnish the Union with the information requested by it, as described above in sub-subparagraph (aa)(i).

(bb) (i) Since about September 2, the Union, by letter, has requested that Respondent furnish the Union with the following information:

1. Names and addresses of all employees at Respondent's West End and Lexington facilities.

2. A copy of the employee handbook applicable at Respondent's West End and Lexington facilities.

3. Names and addresses of all Teaching Assistants employed at Respondent's West End facility.

4. Dates of hire and salaries of all Teaching Assistants employed at Respondent's West End facility.

5. Copies of time and attendance policies for all of Respondent's facilities.

6. Copies of all disciplinary and warning notices for employees who had been employed at Respondent's West End facility.

7. Copies of all disciplinary and warning notices for all of Respondent's employees.

8. Names of all Respondent employees who were terminated or disciplined within the last year.

9.   Copies of all documents supporting the termination or discipline of the employees mentioned in response to the information request directly above.

10.  Documentation concerning any benefits provided to Respondent's employees at its West End and Lexington facilities.

11.  Documentation concerning sick time, vacation time, and Respondent's time off policy at all of Respondent's facilities.

12.  Employment application given to prospective employees at Respondent's West End and Lexington facilities.

13. Copies of any training materials provided to Respondent employees at Respondent's West End and Lexington facilities.

(*Id.* at ¶ 7 and Exh. G.)

(ii) The information requested by the Union, as described above in sub-subparagraph (bb)(i), is necessary for and relevant to the Union's performance of its duties as the exclusive collective-bargaining representative of the West End Assistant Teacher Unit, West End Head Teacher Unit, Lexington Assistant Teacher Unit, and Lexington Head Teacher Unit.

(iii) Since about September 2, Respondent has failed and refused to furnish the Union with the information requested by it, as described above in sub-subparagraph (bb)(i).

(cc) By the conduct described above in subparagraphs (m) through (t), Respondent has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act, in violation of Section 8(a)(1) of the Act.

(dd) By the conduct described above in subparagraph (u), Respondent has been discriminating against employees for filing charges or giving testimony under the Act, in violation of Section 8(a)(1) and (4) of the Act.

(ee) By the conduct described above in subparagraph (v), Respondent has been discriminating in regard to the hire or tenure or terms or conditions of employment of its employees, thereby discouraging membership in a labor organization, in violation of Section 8(a)(1) and (3) of the Act.

(ff) By the conduct described above in subparagraphs (w) through (bb), Respondent has been failing and refusing to bargain collectively and in good faith with the exclusive collective bargaining representative of its employees within the meaning of Section 8(d) of the Act, in violation of Section 8(a)(1) and (5) of the Act.

(gg) The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

6. Upon information and belief, it may fairly be anticipated that unless the aforesaid flagrant and egregious unfair labor practices are enjoined immediately Respondent will

continue to engage in such conduct, or in similar or related conduct, and a serious flouting of the Act will continue, with the result that enforcement of important provisions of the Act and of public policy will be thwarted before Respondent can be placed under legal restraint through the regular procedure of a Board order and enforcement decree.

7. Upon information and belief, to avoid the serious consequences set forth above, it is essential, just, proper, and appropriate for the purposes of effectuating the policies of the Act and avoiding substantial and immediate injury to the public policies, Respondent's employees, and to the public interest in accordance with the purpose of Section 10(j) of the Act that, pending the final dispositions of the matters involved herein which are now pending before the Board, Respondent be enjoined and restrained as herein prayed.

8. No other or prior application has been made for the order or relief sought herein.

**WHEREFORE** Petitioner prays:

9. That the Court issue an Order directing Respondent to appear before this Court at a time and place fixed by the Court and show cause, if any there be, why an injunction should not issue, enjoining and restraining Respondent, its officers, representatives, agents, servants, employees, attorneys and other persons acting in concert or participating with them, pending final disposition of the matters involved herein, which are now pending before the Board, from, in any manner or by an means:

(a)   threatening   employees   with   facility   closure   to discourage employees from supporting the Union;

(b)   soliciting   grievances   and   implicitly   promising   to remedy   them   in   order   to   discourage   employees   from supporting the Union;

(c)   threatening to discharge employees if they support the Union;

(d)   promising employees raises if they reject the Union;

(e)   giving employees the impression their Union activities are under surveillance;

(f)   discharging   employees   because   they   engaged   in activities   in   support   of   the   Union   and   in   order   to discourage employees from supporting the Union;

(g)   refusing to bargain with the Union as the designated collective   bargaining   representative   of   the   West   End assistant teachers unit;

(h)   refusing to bargain with the Union as the designated collective bargaining representative of the West End head teachers unit;

(i)   refusing to bargain with the Union as the designated collective bargaining representative of the Lexington Ave. assistant teachers unit;

(j)   refusing to bargain with the Union as the designated collective bargaining representative of the Lexington Ave. head teachers unit;

(k)   failing   and   refusing   to   provide   the   Union   with requested information relevant and necessary to the Union's performance of its duties;

(l)   telling employees that the Employer will not bargain with the Union;

(m)   telling employees their support for  the Union is futile;

(n)   threatening   employees   with   unspecified   reprisals   if they support the Union;

(o)   threatening employees with decreased benefits or more onerous working conditions if they support the Union;

(p)   interrogating   employees   about   their   support   for   the Union;

(q)   soliciting employees to renounce their support for the Union;

(r)   issuing   written   warnings   to   employees   because   they testify in a Board hearing on behalf of the Union; or

(s)   in any other manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed them by Section 7 of the Act.

10.   Petitioner further requests an affirmative order requiring Respondent, pending final Board adjudication, to, Within five (5) days of the issuance of the Court's Order:

(a)   offer the unlawfully discharged employees immediate reinstatement to their former positions, without prejudice to their seniority or other rights and privileges previously enjoyed, displacing, if necessary, any employees hired, transferred, or reassigned to replace them;[2]

(b)   on request, bargain collectively and in good faith with the Union as the exclusive representative of the West End assistant teachers unit;

(c)   recognize and, on request, bargain collectively and in good faith with the Union as the exclusive representative of the unit employees in the West End head teachers, Lexington assistant teachers, and Lexington head teachers units concerning terms and conditions of employment and, if understandings are reached, embody them in written, signed agreements;

(d)   provide the Union with the relevant, requested information listed above;

(e)   provide the Union with proposed dates for collective-bargaining regarding the West End assistant teachers unit and meet and bargain in good faith with the Union as the exclusive representative of those unit employees for a minimum of five days per month, or any other schedule agreeable to both parties, until an agreement is reached, the parties agree to a hiatus in bargaining, or the parties reach a lawful impasse;

(f)   post copies of the District Court's order, in both English and Spanish, at the Employers' facility where notices to employees are customarily posted;

---

[2] Under Board and Second Circuit law, *A.P.R.A. Fuel Oil Buyers Group*, 320 NLRB 408, 415 (1995), enfd. 134 F.3d 50 (2d Cir. 1997); *NLRB v. Future Ambulette, Inc.*, 903 F.2d 140, 145 (2d Cir. 1990), the offer to Catherine Duran would have to be conditional, contingent upon her attaining a high school diploma or GED from a school approved by the State Education department, since such a degree is a prerequisite, under New York City law, to holding an assistant teacher's job in child care service for children ages two to six.   25 N.Y.C.R.R. § 47.14(a) and (f).

(g)   have management official Joanna Fan read—or be present while a Board agent reads—the District Court's order to the widest possible audience of assembled employees; and

(h)   within twenty (20) days of issuance of this decree, file with the District Court, with a copy served to the Acting Regional Director, Region 2, a sworn affidavit from a responsible official setting forth with specificity the manner in which the Employer is complying with the terms of the decree.

10.   That upon return of such Order to Show Cause, the Court issue an Order enjoining and restraining Respondent in the manner set forth above.

11.   That the Court grant such further and other relief as may be just and proper.

Dated at New York, New York,
March 16, 2011
                              Respectfully submitted,


                              _____
                              Nicole Buffalano (NB 7916)
                              Jamie Rucker (JR 6767)
                              Counsel for Petitioner
                              National Labor Relations Board
                              Region 2
                              26 Federal Plaza, Room 3614
                              New York, New York 10278-0104
                              (212) 264-0493
                              (212) 264-0355
                              FAX (212) 264-2450

Lafe Solomon, Acting General Counsel
Barry J. Kearney, Associate General Counsel
Ellen A. Farrell, Deputy Associate General Counsel
Judith I. Katz, Assistant General Counsel
Karen P. Fernbach, Regional Attorney, Region 2
Donald B. Zavelo, Deputy Regional Attorney, Region 2