FORM NLRB-5168
(2-08)

| | |
|---|---|
| 1  City of New York | |
| 2 | Case Nos. 2-CA-39988 |
| 3 | 2-CA-40056 |
| 4 | 2-CA-40107 |
| 5  County of New York | |

**Confidential Witness Affidavit**

I, Harvey Mars, being first duly sworn upon my oath, hereby state as follows:

I have been given assurances by an agent of the National Labor Relations Board that this Confidential Witness Affidavit will be considered a confidential law enforcement record by the Board and will not be disclosed unless it becomes necessary to produce the Confidential Witness Affidavit in connection with a formal proceeding.[1]

My business address is 322 West 48" Street, Suite 6R, New York, NY 10036.

My telephone number is 212-765-4300 ext. 16.

I have been the legal representative of District Council 1707, AFSCME, AFL-CIO (Union), in its dealings with Preschool of America ("the Employer"), for the purposes of collective-bargaining negotiations and the unfair labor practice charges at issue herein.

This statement supplements my affidavit of January 28, 2011.

On February 23, 2011, at around 10 a.m., the Union and Employer held a bargaining session at my law offices. The Union

---

**PRIVACY ACT STATEMENT**
Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et. seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and/or unfair labor practice proceedings and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary. However, failure to supply the information may cause the NLRB to refuse to process any further an unfair labor practice or representation case, or may cause the NLRB to issue you a subpoena and seek enforcement of the subpoena in federal court.

1

FORM NLRB-5168
(2-08)

1 was represented by me, Union organizing director Mike Green
2 ("Green"), Union organizers Julian DeJesus ("DeJesus") and Henry
3 Moore ("Moore"), and two discharged employees from the unit, Joan
4 DeLeon and Catherine Duran. The Employer was represented by
5 attorney Joseph Cacciato ("Cacciato").
6     I began the meeting by giving Cacciato an 11-page document
7 which included proposals on dues checkoff, layoffs, leave,
8 overtime, holidays, grievance procedure, discipline, health and
9 dental insurance, and wages. A copy of that document is attached
10 hereto as Exhibit A. I then reviewed the proposals with
11 Cacciato, one by one. Cacciato asked why the Union had proposed
12 that laid-off employees remain on a recall list for only one
13 year. I answered that if the Employer wanted laid-off employees
14 to remain on a recall list for longer than that, he should feel
15 free to propose that.
16     Cacciato did not agree to any proposals or offer any
17 counter-proposals, but did say the Employer did not agree that
18 layoffs should occur in order of seniority.
19     The meeting lasted only about 30 minutes, including the
20 scheduling of further bargaining sessions on March 8 and 22,
21 2011. I asked Cacciato to bring an Employer representative with
22 bargaining authority to the next meeting.
23     The Union met with the Employer for its second bargaining
24 session yesterday, March 8, 2011, again at my offices. The
25 meeting lasted only about 45 minutes.

HSM

FORM NLRB-5168
(2-08)

1     The Union was again represented by me, Green, Moore, and
2 DeJesus, plus discharged employees Tamika Singleton, Hope Dublin,
3 and Joan DeLeon. No one from the Employer's management staff was
4 present. I asked Cacciato why he did not have an Employer
5 representative with him and he told me they did not want to meet
6 with us.
7     Cacciato appeared to be unprepared for the meeting. He
8 started the meeting by reading the 11-page document I had given
9 him roughly two weeks ago. Further, he did not have any written
10 counter-proposals and admitted the Employer had told him not to
11 reduce any of its proposals to writing.
12     When I asked Cacciato specific questions about the
13 Employer's positions on various issues, Cacciato told me he was
14 "just the messenger."
15     Cacciato rejected most of the proposals the Union made. The
16 Employer made no counter-proposals that were not the status quo,
17 except that Cacciato proposed wage increases even lower than
18 those that the employees previously had received, accepted the
19 Union's proposal for no strikes or lockouts---but without a
20 grievance and arbitration procedure---agreed to allow the Union
21 to have some bulletin board space, and agreed to a contract term
22 of three years.
23
24 [The remainder of this page has intentionally been left blank]

FORM NLRB-5168
(2-08)

1

2      Caciatto agreed to provide me with written counter-proposals

3 by March 18, 2011.

4 I am being provided a copy of this Confidential Witness Affidavit
5 for my review. If, after reviewing this affidavit again I
6 remember anything else that is relevant, or desire to make any
7 changes, I will immediately notify the Board agent. I understand
8 that this affidavit is a confidential law enforcement record and
9 should not be shown to any person other than my attorney or other
10 person representing me in this proceeding.
11
12 I have read this statement consisting of 4 pages, including this
13 page. I fully understand its contents, and I certify that it is
14 true and correct to the best of my knowledge and belief.
15
16
17                                     _Harvey S. Mars_
18                                     Harvey Mars
19 Sworn to before me
20 by telephone this
21 9th day of March 2011
22
23 _____
24 Jamie Rucker, Board Agent,
25 National Labor Relations Board
26
27

4

2/23/11
Reviewed

# PRESCHOOL OF AMERICA

## D.C. 1707, AFSCME COLLECTIVE BARGAINING AGREEMENT

TA

I. **RECOGNITION**

A. The collective bargaining unit consists of full-time and regular part-time employees of ("the Employer").

With the exception of the positions excluded from the unit by the National Labor Relations Board or the New York State Employment Board

B. The Employer recognizes Community and Social Agency Employees' Union, District Council 1707, AFSCME, AFL-CIO, ("the Union") as the exclusive bargaining representative of the employees within the collective bargaining unit.

II. **UNION SECURITY AND DUES CHECKOFF**

A. All employees covered by this Agreement, as a condition of employment, shall be or become members in good standing of the Union no later than the thirty-first day following the beginning of employment hereunder, Employees who are members of the Union shall remain in good standing for the duration of their employment.

B. The Employer agrees to report to the Union within five (5) days the names, Social Security numbers, and the first day of employment of any new employee. The Employer further agrees that upon receipt of written authorization from each employee it shall deduct from such employee's salary the proper amount of dues payable and transmit same each month to the Union no later than the 10th day of the following month. The amount to be deducted will be certified by a representative from the Union office. Authorization from an employee will be made on a Union check-off form. These forms will be supplied by the Union.

C. The Employer shall provide one (1) hour each of two (2) Union meetings at each site. The purpose of these meetings is to give the Union the opportunity to discuss the provisions of this Agreement with bargaining unit members and to elect a Union steward.

D. The amounts deducted shall be in accordance with the Union dues schedule which the Union shall submit to the Employer.

E. New bargaining unit members shall be informed in writing at the time they are hired of the job titles for which they are hired; the hours and days of work and their salaries. The Union shall promptly receive a copy of their hiring letter. All new bargaining unit employees shall receive a

1707 CBA - Preschool of America.3.28.2011.doc


GOVERNMENT EXHIBIT A

written job description. All new bargaining unit [up to] employees shall be informed by the Employer that the Community and Social Agency Employees Union, District Council 1707, American Federation of State, County and Municipal Employees, AFL-CIO, is the sole collective bargaining unit of employees of the Employer. Such new bargaining unit employees shall be given a copy of this agreement. A list of new bargaining unit employees, job titles, salaries and date of hire shall be given by the Employer to the Union at least once a month.

F.    Employees shall be permitted to deduct $4.00 each pay period for a contribution to P.E.O.P.L.E.

III. **LAYOFF**

In cases of layoffs, shop seniority shall be determinative of those retained. Employees about to be laid off shall be permitted to bump a less senior employee in a different job title in the same rate range if they have had reasonable experience in the job and have the ability to do the work. If employee chooses to be laid off, he or she may elect to be placed on the recall list pursuant to Article IV or receive severance pay as of the date of the layoff. The Union shall be notified prior to any layoff.

IV. **RECALL**

Employees shall be recalled in inverse order of shop seniority. Employees shall stay on a recall list for one (1) year.

V. **PROMOTIONS, FILLING OF NEW JOBS AND TRANSFERS**

A.    Notice of vacancies within the bargaining unit shall be posted on the bulletin board for at least two weeks before the vacancy is filled, except in emergency situations. Qualified current employees shall have preference for vacant positions.

B.    Current employees who are qualified shall be given the position for which they apply in order of shop seniority.

C.    Employees who are promoted to a higher paying position shall be paid either the minimum rate for the new position or at least five (5%) percent more than their previous salary, whichever is higher.

D.    The Employer shall seek volunteers for positions they need to fill by transfer. If there are no volunteers, the Employer shall transfer the least senior employee who is qualified.

E.  When an employee is temporarily assigned the duties of an employee in a higher paying job title, the employee shall be paid for the assignment at the minimum rate of the higher title. [or 5% more than current — handwritten]

## VI.  LEAVES

A.  **Bereavement.** There shall be no pay deduction for the absence of up to five (5) working days because of death in the immediate family (the term "immediate family" for these purposes means spouse, natural/adopted children, parents, grandparents, grandchild, brothers and sisters, domestic partners, mother-in-law and father-in-law).

B.  **Maternity/Paternity/Adoptive Parent Leave**
   **General**: A permanent employee shall, at t he employee's option, be granted maternity/paternity/adoptive Parent leave of up to a total of nine (9) months. Longer maternity/paternity/Adoptive Parent leave may be granted a the discretion of the Employer based upon the personnel requirement of the Employer. Such leave shall be leave without pay, except that employees who are eligible for sick leave benefits and/or Disability Benefits shall receive such benefit and such maternity/paternity/Adoptive Leave may, at the option of the employee, include regular vacation pay earned prior to such leave.

C.  Employees with twelve (12) months of continuous service shall be granted leave of up to six (6) months leave under the same terms as the FMLA. Longer leave may be granted at the discretion of the Employer.

D.  Leave for personal reasons may be granted without pay at the discretion of the Employer. Such leave time will not be computed toward seniority, but accrued seniority shall not be lost during the period of leave.

E.  **Worker's Compensation and Disability.** The Employer shall provide Disability, Unemployment Insurance and Worker's Compensation coverage for its employees as required by law.

F.  **Vacation Leave.** Employees who have worked three months or more shall be entitled to vacation leave on the following schedule:

   3 months - 1st Anniversary    -    2 weeks
   2nd Anniversary               -    3 weeks
   3rd Anniversary               -    4 weeks

   (1)  No request for vacation leave shall be unreasonably denied by the Employer. Any request for vacation leave shall be responded to in writing within two (2) weeks of the request.

G. **Sick Leave.**

(1) Employees who have worked for one month or more shall be entitled to eighteen (18) days of sick leave per year.

(2) Sick leave may be accumulated without limitation. Upon resignation, employees will be paid for their accumulated sick leave.

(3) Employees shall be permitted to take more than one sick day at a time, if necessary.

VII. **OVERTIME**

Overtime shall not be mandatory, except in emergencies. Overtime shall be offered based on job title seniority. Employees shall be compensated for all hours worked over thirty-five (35) at time and one-half (1-1/2) their hourly rate. Workers shall be paid for all hours worked.

VIII. **HOLIDAYS**

A. Employees shall be paid for the following holidays:

| | |
|---|---|
| New Year's Day | Labor Day |
| Memorial Day | Thanksgiving Day |
| July 4th | Friday after Thanksgiving |
| Martin Luther King, Jr.'s Birthday | Christmas Eve |
| Presidents' Day | Christmas Day |
| Columbus Day | Veterans Day |
| Good Friday | |

When any such holiday falls on a Saturday, the preceding Friday will be observed as the holiday and when any such holiday falls on a Sunday, the following Monday will be observed as a holiday. ~~If a holiday falls on either a Thursday or Friday, then employees shall have the previous day off.~~ [handwritten: If a holiday falls on Friday - Thursday off. Falls on a Thursday - Friday off.]

IX. **PERSONAL DAYS**

Employees shall be given six (6) days per year to be used for personal business or emergencies.

## X. **SNOW DAYS**

The Employer's Facility shall be closed when the local school district where the Employer is located declares a snow emergency. Employees shall be paid for the day. Sick or personal days may be used if an employee is not able to get to their work site because of snow.

## XI. **DISCIPLINE**

Employees may be disciplined only for just cause. The principles of progressive discipline shall be applied. Notice of discipline shall be given to employees and the Union in writing and shall include the specific reasons for the discipline.

## XII. **SEVERANCE PAY**

A.      Employees who are dismissed shall receive one week's salary as severance pay for each full year of continuous employment immediately preceding the dismissal, up to a maximum of ten (10) week's salary.

B.      Employees who are laid off shall receive the following severance if they are not recalled within six (6) months of layoff; up to a maximum of fifty-two (52) weeks.

| | | |
|---|---|---|
| 0-2 years of service | - | 1-1/2 weeks salary for each year or portion of a year. |
| More than 2 years of service | - | 2 weeks' salary for each year or portion of a year. |

## XIII. **GRIEVANCE PROCEDURE**

1.      Grievance:  It is the intention of the parties that all complaints, disputes, controversies or grievances arising between the parties hereto which involved questions of interpretation or application of the express written provisions of this Agreement, shall be adjusted in the following manner:

Step 1.         An employee having a grievance shall, together with his/her Union delegate or other Union representative, present such grievance to the employee's Site Director within ten (10) working days after the occurrence, facts or circumstances constituting the complaint, dispute, controversy or grievance arose. The employee's Site Director shall answer the grievance in writing within ten (10) working days after its presentation in Step 1.

Step 2. If the grievance is not settled in Step 1, the Union may present it to the Employer's Executive Director within ten (10) working days after the denial of the grievance in Step 1. The Employer's Executive Director shall schedule a meeting to discuss the grievance. A written response to the grievance shall be submitted by the Employer ten (10) days after the meeting is held.

Step 3. If the grievance is not settled in Step 2, the parties may elect to submit it to non-binding mediation before the FMCS.

2. The failure of the grievant or the Union to present a grievance within the time limits set forth herein shall constitute a waiver of the grievance and bar all further action thereon. Failure on the part of the Employer to answer a grievance at any step shall not be deemed acquiescence thereto and the Union may proceed to the next step.

3. All time limits herein specified shall be deemed to exclude Saturdays, Sundays and contractual holidays.

4. Any grievance that effects more than one bargaining unit member may be initiated at Step 2 of the grievance procedure.

5. Arbitration:

a. Within thirty (30) calendar days of receiving the written answer to the written grievance as set forth in Step 2 of Paragraph "1" of this Article, the Union or the Employer, as the case may be, shall notify the Employer or the Union, as the case may be, in writing of its intent to arbitrate and shall also file a demand for arbitration with the New York City office of the American Arbitration Association, as provided in Paragraph "b" below. If notice of intent to arbitrate is not so given and filed within thirty (30) calendar days of receipt of the written answer to the written grievance, the right to arbitrate is waived.

b. In the event a dispute is submitted to arbitration, then such dispute will be resolved pursuant to the Voluntary Labor Arbitration Rules established by the American Arbitration Association.

c. In all arbitration proceedings, the following shall apply:

   (i) The arbitrator shall not have the power to add to, delete from or modify the provisions of this Agreement.

   (ii) The decision of the arbitrator shall be final and binding upon both parties.

   (iii) The costs of arbitration shall be shared equally between the Employer and the Union.

6. This Agreement shall not vest or create in any employee or group of employees any rights or privileges that they or any of them could enforce. All rights, including the rights of enforcement of the provisions of this Agreement and remedies for breach thereof by the Employer and the Union, shall rest solely with the Union and the Employer.

## XIV. HEALTH AND DENTAL INSURANCE

A. The Employer shall pay the full cost of health and dental insurance premiums for single coverage and family coverage. Domestic partners shall be included in the definition of "family".

B. Any changes in health or dental insurance coverage, or the carrier providing the coverage shall be negotiated with the Union prior to implementation.

## XV. LIFE INSURANCE

The Employer will pay the cost of group term life insurance in the amount of $25,000 per employee.

## XVI. PENSION

The Employer will create a defined contribution pension plan and remit into separate accounts maintained for each employee ten (10) percent of Employees' annual salaries.

## XVII. UNION ACTIVITY

A. The Employer shall make bulletin board space available in locations which shall be used exclusively for the purpose of posting notices by the Union or bargaining unit members.

B. The Union shall designate and notify the Employer of the names of the shop stewards and other union representatives.

C. Staff members of District council 1707 shall have reasonable access to the Employer's facility.

D. The shop stewards shall not be penalized in any manner for participating in the resolution of grievances and arbitration. Witnesses in arbitration proceedings shall not be penalized in any manner for their attendance at the arbitration.

E. One steward and one alternate shall be chosen.

## XVIII. **WORK LOAD OF UNION OFFICIALS ON STAFF**

The Employer shall grant to one Union designated chapter chair or steward such relief from his/her individual assigned work load as his/her duties as Union official may from time to time reasonably require.

## XIX. **THEFT OR PROPERTY DAMAGE**

The Employer agrees to reserve the sum of Ten Thousand ($10,000) Dollars each year to reimburse employees who suffer financial losses by reason of minor thefts of personal property and property damage occurring on the premises. Payment made from that fund shall not exceed Two Hundred Fifty ($250.00) Dollars per claim or Four Hundred ($400.00) Dollars per employee in any one year of this Agreement. Such losses or claims shall not include losses if cash. All claims shall be submitted to the Director for verification.

## XX. **PERSONNEL FILE**

Upon request, employees shall be given access to their personnel files [handwritten insertion: at least] twice a year. No adverse comments or other correspondence shall be placed in employees' files unless they are given copies and the right to respond at the time material is put in the file.

## XXI. **WAGES**

All employees shall receive a five (5%) percent wage increase annually upon the effective date of this Agreement. Employees shall be paid semi-monthly by the Employer.

## XXII. **BREAKS**

A.   All employees shall have a sixty (60) minute, duty-free paid lunch break.

B.   Rest Periods: Employees shall have paid rest periods of fifteen (15) minutes each morning and afternoon.

## XXIII. **LONGEVITY/WAGE INCREASE**

The following longevity increases shall be given:

| | | |
|---|---|---|
| At 5th Anniversary | - | $ 500 |
| At 10th Anniversary | - | $ 1000 |
| At 15th Anniversary | - | $ 1500 |

## XXIV. **NO STRIKE/NO LOCKOUT**

The Union shall not engage in Strikes during the life of this Agreement, except that no member of the bargaining unit shall be required to cross a picket line of another union. The Employer agrees that there will be not lockouts during the life of this Agreement.

## XXV.    **REIMBURSEMENT OF EXPENSES**

A.   Employees shall be reimbursed at the current IRS rates for official use of their cars.

B.   Employees shall be promptly reimbursed for all authorized expenses incurred on behalf of the employer.

C.   Where applicable, bargaining unit members will be reimbursed for the cost of their uniforms.

## XXVI. **LABOR MANAGEMENT COMMITTEE**

There shall be a Joint Labor/Management Health, Safety Committee, that shall meet as needed.

## XXVII.    **NON DISCRIMINATION**

Discrimination against any Employee because of race, color, creed, disability, citizenship, national origin, marital status, religion, gender, ethnic background, political affiliation, age, sexual orientation or union activity is prohibited under this Agreement.

## XXIII.    **SUCCESSORS AND ASSIGNS**

In the event the owner of the Employer sells, transfers or assigns it during the effective dates of this Agreement, both the original Employer and any transferee or assignee shall be individually and

jointly liable for the complete performance of this Agreement. A successor shall be defined as any person(s), corporations, partnerships or other legal entity which receives the rights of the Employer to present the production for public performance, whether or not said entity hires a majority of the Employer's Employees.

XXIX.     **SEPARABILITY**

In the event that one or more clauses or terms of this Agreement are found to be in violation of the law, all remaining clauses and terms shall remain in full force and effect.

XXX.     **MAINTENANCE OF BENEFITS**

Any benefits currently provided by the Employer to employees which are greater than those contained in the Agreement shall continue.

XXXI.     **STAFFING RATIOS**

The Employer agrees that'it will maintain compliance with all applicable staffing ratios as required by law.

XXXII.     **HOURS OF EMPLOYMENT**

[                              ]

XXXIII.     **DURATION**

The duration of this Agreement shall be through _____.

XXXIV.     **RATIFICATION**

Once this Agreement is fully executed, it will be subject to a ratification vote by the members of the bargaining unit.

XXXV.     **MISCELLANEOUS**

    1.     Any mandatory training shall be paid for by the Employer. Training shall be conducted on working time, subject to overtime payments.

    2.     Employees shall have a fifteen minute grace period to punch in to work in the beginning of the day.

3. Cell phones shall be permitted for emergency use only.

**The Union reserves the right to revise, modify or delete any of these proposals prior to ratification.**